IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LORENC KUKA,
    Plaintiff,

v.

U.S. TRUCK & TRAILER SERVICE, INC.,
    Defendant.

CIVIL ACTION
No. 19-5837

**MEMORANDUM**

**SCHMEHL, J.  /s/ JLS**                        **JUNE 30, 2020**

   This matter arises out of Plaintiff Lorenc Kuka's claims that Defendant U.S. Truck & Trailer Service, Inc. ("U.S. Truck & Trailer") improperly installed a new transmission on his tractor-trailer. (ECF No. 1 at 2.) Kuka alleges, as a result, that he lost wages and that his vehicle was significantly damaged. (*Id*.) Kuka is a *pro se* litigant and has brought claims, under the Federal Tort Claims Act ("FTCA"), for (1) breach of contract; (2) negligence; and (3) fraud. (*See id*.)

   On or around November 14, 2018, Kuka contracted with U.S. Truck & Trailer to tow and do basic repair on his tractor-trailer. (ECF No. 1 at 2.) Kuka alleges that, on that same day, U.S. Truck & Trailer ". . . caused significant transmission damage to the Plaintiff's tractor-trailer while . . . towing the tractor[-]trailer to the shop for repairs." (*Id*. at 2.) Because of this, U.S. Truck & Trailer then allegedly agreed to "purchase, replace, and repair" the damaged transmission with a new transmission without additional charges to the Kuka. (*Id*.) The following day, upon completion of the transmission replacement, U.S. Truck & Trailer allegedly provided Kuka an "expressed warranty of the new transmission." (*Id*.) U.S. Truck & Trailer further represented to

1

Kuka that the replacement transmission was new, purchased from Weller Truck Parts and carrying the Weller Transmission Warranty.  (*Id*. at 4.)

Subsequently, Kuka's tractor-trailer broke down on numerous occasions, including on December 6, 2018, January 17, 2019, February 5, 2019, February 27, 2019, and June 27, 2019.  (*Id*. at 2-3.)  To address these mechanical issues, Plaintiff took the tractor-trailer to Bergey's Truck Centers for additional diagnostics, maintenance, and repairs.  (*Id*. at 3.)  Upon examination of Plaintiff's tractor-trailer, ". . . it was determined that the Defendant . . . [had] negligently replaced the transmission with a faulty and unfit transmission."  (*Id*.)

In response to these allegations, U.S. Truck & Trailer has moved to dismiss Kuka's complaint for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (*See* ECF No. 4.)  First, U.S. Truck & Trailer argues that Plaintiff's claims, all asserted under the FTCA, fail as a matter of law as FTCA claims may only be asserted against the United States Government.  (*Id*. at 4-5.)  Second, it argues that this Court lacks subject matter over this dispute as Kuka's Complaint fails to allege damages in excess of $75,000.  (*Id*. at 5-7.)

We find both of U.S. Truck & Trailer's arguments to be persuasive.  First, it correctly states that claims made under the FTCA may only be asserted against governmental entities, and not private companies.  *See* 28 U.S.C. § 1346(b).  Thus, there is no cognizable claim in this matter that arises ". . . under the Constitution, laws, or treaties of the United States" and we cannot exercise subject matter jurisdiction on the basis of a federal question.  28 U.S.C. § 1331.  Second, we find that Kuka has not met his burden showing that the amount in controversy in this matter exceeds $75,000.  As a result, although there is complete diversity of citizenship between Kuka and U.S.

Truck & Trailer,[1] we also cannot exercise subject matter jurisdiction on the basis of diversity. *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . ."). Thus, we dismiss Kuka's Complaint for lack of subject matter jurisdiction.

## I.     LEGAL STANDARDS
### a. Federal Rule of Civil Procedure 12(b)(6)

To survive a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). To meet this standard, a complaint must plead "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 787. The Third Circuit has developed a three-part framework in this analysis: (1) a plaintiff must present enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements; (2) a plaintiff's claims may not be merely conclusory; and (3) where there are well-pleaded factual allegations, the court should assume their truth and then determine if they plausibly entitle a plaintiff to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787-89 (3d Cir. 2016). In this analysis, the Court must assume all nonconclusory factual allegations to be true, construe those truths in the light most favorable to the plaintiff and draw all reasonable inferences therefrom. *Id.* at 790.

---

[1] Per Kuka's Complaint, he is a citizen of the Commonwealth of Pennsylvania and U.S. Truck & Trailer is incorporated in the State of Indiana. (ECF No. 1 at 1-2.) U.S. Truck & Trailer does not contest this and does not raise incomplete diversity as a jurisdictional issue in this matter.

### b. Federal Rule of Civil Procedure 12(b)(1)

Federal District Courts have original jurisdiction over ". . . all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As such, District Courts possess ". . . federal question jurisdiction in any case where a plaintiff with standing makes a non-frivolous allegation that he or she is entitled to relief because the defendant's conduct violated a federal statute." *Growth Horizons, Inc. v. Del. Cnty.*, 983 D.2d 1277, 1281 (3d Cir. 1993).

Federal District Courts are also vested with original jurisdiction over civil actions between citizens of different states, "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . ." 28 U.S.C. § 1332(a). When determining if the amount in controversy is greater than $75,000, the Court will generally accept the plaintiff's good faith allegations. *Onyiuke v. Cheap Tickets, Inc.*, 435 F. App'x 137, 139 (3d Cir. 2011) (citation omitted). A case may be dismissed, however, for failure to meet the amount in controversy if it appears to a "legal certainty" that the claim falls below this threshold. *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). In this analysis, whether a plaintiff's claims are for less than $75,000 depends "on what damages a plaintiff could conceivably recover under state law." *Id.* (citation omitted). The party asserting jurisdiction on the basis of diversity of citizenship bears the burden of proof. *McCann v. George W. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

A challenge to subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may be either a facial or a factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge to subject matter jurisdiction does so without disputing the facts alleged in the complaint, and it requires the court to assume as true all

### b. Federal Rule of Civil Procedure 12(b)(1)

Federal District Courts have original jurisdiction over ". . . all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. As such, District Courts possess ". . . federal question jurisdiction in any case where a plaintiff with standing makes a non-frivolous allegation that he or she is entitled to relief because the defendant's conduct violated a federal statute." *Growth Horizons, Inc. v. Del. Cnty.*, 983 D.2d 1277, 1281 (3d Cir. 1993).

Federal District Courts are also vested with original jurisdiction over civil actions between citizens of different states, "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . ." 28 U.S.C. § 1332(a). When determining if the amount in controversy is greater than $75,000, the Court will generally accept the plaintiff's good faith allegations. *Onyiuke v. Cheap Tickets, Inc.*, 435 F. App'x 137, 139 (3d Cir. 2011) (citation omitted). A case may be dismissed, however, for failure to meet the amount in controversy if it appears to a "legal certainty" that the claim falls below this threshold. *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). In this analysis, whether a plaintiff's claims are for less than $75,000 depends "on what damages a plaintiff could conceivably recover under state law." *Id.* (citation omitted). The party asserting jurisdiction on the basis of diversity of citizenship bears the burden of proof. *McCann v. George W. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

A challenge to subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) may be either a facial or a factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial challenge to subject matter jurisdiction does so without disputing the facts alleged in the complaint, and it requires the court to assume as true all

allegations therein. *Davis v. Wells Fargo*, 824 F.3d 333, 345 (3d Cir. 2016) (citations omitted). A factual challenge, however, attacks the factual allegations underlying the assertion of jurisdiction, "either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). When assessing a factual attack on subject matter jurisdiction, courts may "weigh and consider evidence outside the pleadings." *Id.* (quoting *Aichele*, 757 F.3d at 358). In this, the plaintiff bears the burden of proof that jurisdiction exists, and no presumptive truthfulness attaches to the plaintiff's allegations. *Id.* (citing *Mortensen*, 549 F.2d at 891).

## II. ANALYSIS

### a. This Court Cannot Exercise Federal Question Jurisdiction as Kuka Has Improperly Asserted Claims Under the Federal Tort Claims Act Against a Private Entity

The Federal Tort Claims Act ("FTCA") grants jurisdiction to federal District Courts over civil claims against the United States for money damages. 28 U.S.C. § 1346(b)(1). In this sense, it serves as a limited waiver of governmental immunity. *Cestonaro v. United States*, 211 F.3d 749, 752-53 (3d Cir. 2000) (noting that the FTCA is a partial waiver of the United States' sovereign immunity and that its "express purpose . . . is to make the United States liable in the same manner and to the same extent as a private individual under like circumstances . . ." (internal quotations and citation omitted)).

Both the FTCA's statutory language and federal jurisprudence make clear that the FTCA is a law of limited applicability. *See* 28 U.S.C. § 2674; *see also Laird v. Nelms*, 406 U.S. 797, 799 (". . . the Federal Tort Claims Act itself precludes the imposition of liability if there has been no negligence or other form of 'misfeasance or nonfeasance,' on the part of the Government."

(citation omitted)). Two such limitations preclude its applicability in the current matter. First, subject to limited exceptions, the FTCA is restricted to negligence actions. *Muhammad v. United States*, 884 F. Supp. 2d 306, 318 n.9 (E.D. Pa. 2012) ("While intentional torts are generally not actionable under the FTCA, the intentional tort proviso provides that false imprisonment and assault and battery are actionable if committed by an 'investigative or law enforcement officer.'") (citation omitted).). Second, the FTCA only provides a vehicle to levy tort claims against the United States or its agents. *Watkins v. Consol. Eng'g Labs. Inc.*, No. 15-147, 2015 U.S. Dist. LEXIS 97698, at *11 (D. Haw. July 27, 2015) (". . . the Federal Tort Claims Act, does not apply—by its very terms it applies only to tort claims asserted against the United States.")

Here, Kuka has levied claims of breach of contract, negligence, and fraud against U.S. Truck & Trailer, purportedly under the FTCA. (ECF No. 1, ¶ 1.) U.S. Truck & Trailer is a private company, and Kuka does not allege that it has any affiliation with the United States Government, either in this matter or generally. (*Id.*, ¶ 5.) Given this, Kuka cannot properly assert any claims, pursuant to the FTCA, against U.S. Truck & Trailer.[2] We thus dismiss these claims.

The only claims that Kuka has made under federal law in this action have been brought under the FTCA.[3] (*See* ECF No. 1.) Given that these claims have been improperly asserted against a private company, we cannot establish subject matter jurisdiction on the basis of a federal question

---

[2] We note that Kuka is a *pro se* litigant and that, as such, his Complaint is held ". . . to less stringent standards than formal pleadings drafted by lawyers . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The Supreme Court has made clear that complaints filed by *pro se* litigants should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 520-21 (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). That is the case here. There is no set of facts that Kuka could prove to properly sustain FTCA claims against U.S. Truck & Trailer, as it is a private company not associated with the Government of the United States.

[3] We additionally note that in his response to U.S. Truck & Trailer's Motion, Kuka states that he "has not asserted that the tort claims arise under the Federal Tort Claims Act, but instead asserts that such claims arise under state law." (ECF No. 6 at 4.) Even if Kuka were to amend his Complaint to remove all references to the FTCA, this Court would still not have subject matter jurisdiction as there is no federal question and Kuka has not alleged an amount in controversy exceeding $75,000.

". . . under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

### b. This Court Cannot Exercise Diversity Jurisdiction as Kuka Has Failed to Show That the Amount in Controversy Exceeds $75,000

As Kuka's FTCA claims fail as a matter of law, we must now assess the validity of subject matter jurisdiction on the basis of diversity jurisdiction.[4] Federal statute provides that district courts shall have original jurisdiction over all civil actions between citizens of different states, "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . ." 28 U.S.C. § 1332(a). Here, it is uncontested that there is complete diversity between Kuka and U.S. Truck & Trailer. *See supra* note 1. At issue is whether the amount in controversy in this matter exceeds $75,000.

In its Motion, U.S. Truck & Trailer contends that Kuka's alleged damages are $32,563.02, totaling the costs resulting from U.S. Truck & Trailer allegedly "install[ing] a defective transmission in Plaintiff's tractor-trailer . . . reimbursement . . . for the cost to repair the transmission, and then replace the transmission." (ECF No. 4 at 6.) In response, Kuka asserts that he ". . . has produced receipts and invoices which [he] has paid in the total amount of $35,950.70." (*Id.*) He further contended that "expenses and loss of income" in addition to unnamed potential future expenses raise the amount in controversy to an amount exceeding $75,000. (*Id.*)

Following oral argument held on April 9, 2020, this Court ordered Kuka to produce information in support of his assertion that the amount in controversy in this matter is greater than $75,000. (ECF No. 9, ¶ 1.) This Court further ordered U.S. Truck & Trailer to file a response to Kuka's supplemental submission. (*Id.*, ¶ 2.)

---

[4] In this analysis, we will disregard all references to the FTCA and assume that Kuka has brought his three claims under the laws of the Commonwealth of Pennsylvania.

7

On April 17, 2020, Kuka submitted the following as exhibits in support of his claim that the damages in this matter exceed $75,000:

A. An email from Rhett Wurtz, of CH Robinson WorldWide, stating that "[d]uring the period of time from November 2018 – June 2019, Mr. Kuka missed significant deliveries/routes due to the issues with his truck. CH Robinson had many jobs which Mr. Kuka had to refuse due to the issues with his truck. During our long relationship, Kuka Trucking does an average of $22,000.00 – [$]25,000.00 [USD] per truck monthly";
B. Business records from Bergey's Truck Centers – Pennsauken ". . . regarding the diagnosis, repair, and replace[ment] of the transmission, injections and other parts of the truck";
C. Photographs of the allegedly defective transmission;
D. Photographs of the "transmission's condition installed by the Defendants";
E. A photograph of the outside of the transmission showing its serial number and "the alleged[ly] switched identification plate"; and
F. A photograph of the transmission installed by Bergey's Truck Centers.

(ECF No. 12, Exs. A-F.)[5]

U.S. Truck & Trailer filed a response to Kuka's supplemental submission on April 23, 2020. (*See* ECF No. 11.) In the response, Counsel for U.S. Truck & Trailer recounts a conversation with Mr. Wurtz in which Wurtz confirmed that: (1) he did not know that his email to Mr. Kuka would be used in a court proceeding; (2) the amounts in Wurtz's email (*i.e.*, $22,000 – $25,000) were "guesstimates" and not calculated based on any documents; and (3) Wurtz did not know when, or for how long, Mr. Kuka's truck was out of service. (ECF No. 11 at 2.) As evidence of this conversation, U.S. Truck & Trailer submitted an email from its Counsel to Wurtz asking him to confirm these points; Wurtz did so by way of reply email. (*Id.*, Ex. A.)

Additionally, in its response, U.S. Truck & Trailer further asserts that Exhibit B of Kuka's supplemental submission contradicts information in the email by Wurtz to Kuka. (ECF No. 11 at 3-4.) Indeed, U.S. Truck & Trailer contends that the repair invoices—attached to Kuka's

---

[5] Exhibits C – F of Mr. Kuka's April 17 submission are photographs and do not relate to the amount in controversy in this matter. (*See* ECF No. 12, Exs. C-F.)

8

submission as Exhibit B—"provide enough information to create a timeline showing that [his] truck traveled 43,262 [miles] during the seven-month time frame alleged in the Complaint. . ." (*Id.* at 3.)  Furthermore, U.S. Truck & Trailer argues that the repair invoices show that the truck was only serviced twice for transmission repairs, the cost of which totaled $15,639.12.  (*Id.* at 4.)

On April 30, 2020,[6] one week after U.S. Truck & Trailer filed its response to Kuka's initial submission, Kuka submitted three additional exhibits in support of his contention that the amount in controversy in this case exceeds $75,000.  (*See* ECF No. 16.)  First, as Exhibit G, he submitted a Form 1120S U.S. Income Tax Return for Kuka Trucking LLC, showing a "total gross receipts or sales for 2018 [of] $419,991.00."  (ECF No. 16 at 1.)  Second, as Exhibit H, Kuka provided a "summary of all the receipts and checks received from CH Robinson Worldwide for [] 2018 . . . [also showing] the total amount of receipts/sales for 2018 was $419,991.00."  (*Id.*)  Third, as Exhibit I, Kuka offered a summary of all receipts and checks received from CH Robinson WorldWide for 2019, showing a total amount of receipts and sales for 2019 of $351,734.21.  (*Id.* at 2.)

U.S. Truck & Trailer filed a reply brief to Kuka's additional exhibits on May 8, 2020, emphasizing that Kuka's 1120S form showed that Kuka ". . . only earned $21,217 for the entire year of 2018."  (ECF No. 14 at 1-2 (showing that Kuka deducted $398,774 in expenses from $419,991 in gross income in 2018).)  Thus, given that Kuka's 2018 net income constituted approximately 5.05% of his gross receipts, U.S. Truck & Trailer estimates that his actual lost income totals approximately $3,413.84.  (*Id.* at 2 (applying a 5% multiplier to Kuka's claim of $68,256.79 loss of gross sales in 2019).)

---

[6] We note that Kuka's April 30 submission was untimely.  (*See* ECF No. 9 ("Plaintiff shall submit to this Court, on or before **Friday, April 17, 2020**, information in support of his assertion that the amount in controversy in this matter is greater than $75,000.00.").)

9

Upon reviewing both parties' submissions, this Court ordered further oral argument to take place on May 11, 2020.  (*See* ECF No. 13.)  After hearing the additional oral argument, we agree with U.S. Truck & Trailer's position.

The Third Circuit has established that, in calculating lost profits, the inquiry is into net profits and not gross receipts.  *Tunis Bros. Co. v. Ford Motor Co.*, 952 F.2d 715, 735-36 (3d Cir. 1991).  Extrapolating from Kuka's 2018 income, we find that his lost net profits from 2019 likely do not exceed $4,000.  Adding this to the cost of the claimed repairs to his tractor-trailer produces an amount in controversy of approximately $36,000.  As such, it appears to a legal certainty that the amount in controversy this matter will not exceed $75,000.  Kuka has not met his burden.  Accordingly, we do not have subject matter jurisdiction based on diversity, and we must dismiss Kuka's Complaint.

### III.   CONCLUSION

For the aforementioned reasons, we lack subject matter jurisdiction over this dispute.  Kuka has not properly asserted a federal question and has failed to meet his burden showing an amount in controversy exceeding $75,000.  Therefore, we dismiss his Complaint.  Should he wish to continue to pursue this case, Kuka may endeavor to file it in the appropriate state court.

An appropriate Order follows.